# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| RICHARD L. SILLS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **Case No. 19-1059-MMM** |
| ) | **Criminal Case No. 16-10049-MMM** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.  (D. 7.[1])  For the reasons that follow, Petitioner's Motion is DENIED, and his claim is DISMISSED.  The Clerk of Court is directed to close this case.

## PROCEDURAL HISTORY

On January 27, 2017, Petitioner Richard Sills pleaded guilty to three counts of receiving, and one count of possessing, child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).  (Cr. D. 15.[2])  He was sentenced to 240 months' imprisonment, 10 years' supervised release, and ordered to pay $4000 in restitution.  (Cr. D. 40 at 52; 54.)  Shortly after sentencing, Petitioner filed a notice of appeal with the U.S. Court of Appeals for the Seventh Circuit.  (Cr. D. 34.)  In his appeal, Petitioner argued that at sentencing he failed to object to various comments about the incriminating statements he made to investigators because he is hard of hearing and did not realize what was said in court.  *United States v. Sills*, 712 F. App'x 581, 583 (7th Cir. 2018).  He also stressed that his prior offenses, for which he was given sentencing enhancements, were

---

[1] Citations to the docket in this case are abbreviated "(D._ )".
[2] Citations to the underlying criminal docket in this case are abbreviated "(Cr. D._ )".

decades old and should have had a lessened impact on his sentence. (App. D. 13.[3]) Petitioner's appellate attorney filed an *Anders*[4] brief asserting that Petitioner's appeal was frivolous and seeking to withdraw as counsel. *Id.* Appellate counsel also informed the Seventh Circuit that Petitioner did not want to withdraw his guilty plea(s). *Id.* Petitioner opposed appellate counsel's motion to withdraw. *Sills*, 712 F. App'x at 582. Despite Petitioner's objection, the Seventh Circuit granted appellate counsel's motion to withdraw and dismissed the appeal. *Id.* at 583.

On May 29, 2019, Petitioner timely filed his Amended Motion to Vacate, Set Aside or Correct Sentence with this Court arguing his sentence should be vacated due to ineffective assistance of counsel during his criminal proceeding. (D. 7.) In his Motion, Petitioner outlined six main arguments to collaterally attack his criminal sentence. *Id.* at 2-10. On July 18, 2019, the Government filed its response. (D. 13.) On August 12, 2019, Petitioner filed a second amended motion to vacate, set aside or correct sentence (D. 19), which the Court deemed a supplemental pleading under Federal Rule of Civil Procedure 15(d). (Text Order 09/16/2019.) On October 10, 2019, Petitioner filed his traverse. (D. 21.) This Order follows.

## LEGAL STANDARD

### Motion under 28 U.S.C. § 2255

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct the conviction or sentence. 28 U.S.C. § 2255(a) (2008). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Such relief "is available only when the sentence was imposed in violation

---

[3] Citations to Petitioner's Seventh Circuit Appellate Court docket (No. 17-2247) is abbreviated as "(App. D. _ )".

[4] *Anders* brief. "A brief filed by a court-appointed defense attorney who wants to withdraw from the case on appeal based on a belief that the appeal is frivolous. *Anders v. California*, 386 U.S. 738 (1967)." Black's Law Dictionary (11th ed. 2019).

of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (internal quotation marks and citation omitted). In evaluating a § 2255 motion, "[t]he district court must review the record and draw all reasonable inferences in favor of the government." *Messinger v. United States*, 872 F.2d 217, 219 (7th Cir. 1989).

Evidentiary Hearing

The court must hold an evidentiary hearing on a § 2255 motion, unless the motion and the record conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b). If the motion fails to raise a cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court, an evidentiary hearing is also unnecessary. *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992). "It is the rule of this [Circuit] that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions." *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996).

Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on a claim for ineffective assistance of counsel in the context of a guilty plea, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006) (citing *Hill v.*

*Lockhart*, 474 U.S. 52, 57-59 (1985)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

A petitioner can prove that his attorney's performance was deficient if he shows that counsel failed to "make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996). To prove prejudice, a petitioner must show that his lawyer's deficiency was a decisive factor in his decision to plead guilty. *Bethel*, 458 F.3d at 719. Failure to show either deficient performance or prejudice on a claim of ineffective assistance of counsel will result in its denial. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993). Where expedient, the Court may dismiss a claim based solely on one prong of the test. *Strickland*, 466 U.S. at 697.

## DISCUSSION

Petitioner raises six main arguments to collaterally attack his criminal sentence. All of the arguments fall under the general umbrella of ineffective assistance of counsel claims. Since some of Petitioner's arguments are redundant to issues raised on appeal, or are undeveloped and unsupported, the Court declines to address them in lengthy detail. *See United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (ruling the court need not address allegations unsupported by "meaningful legal and factual arguments"). The arguments are addressed in the order in which they were presented.

## I.     Lack of Federal Jurisdiction

Petitioner begins his Motion by arguing that his attorney was ineffective for failing to challenge the district court's jurisdiction over his criminal prosecution.  (D. 7 at 2-3.)  To support this allegation, Petitioner offers the unsupported and undeveloped arguments that: (i) the criminal indictment failed to charge a federal offense; (ii) the detective who initiated the investigation into his illegal activity was a state employee rather than a federal official, which prevented the Court from having jurisdiction over his suit; and (iii) his internet activity failed to have a sufficient impact on interstate commerce in order to qualify as a federal offense.  *Id.* at 3.

In response, the Government asserts that its investigation into Petitioner's activity did not circumvent federal jurisdiction because the detective was a deputized Task Force Officer with Homeland Security Investigations ("HSI")  at the time of Petitioner's investigation and arrest.  (D. 13 at 12.)  It also credits an affidavit provided by Petitioner's counsel which declares that the illegal conduct for which Petitioner was charged occurred within this Court's personal jurisdiction and that the indictment sufficiently identified federal crimes.  *Id.*  The Government concludes that counsel for Petitioner was not ineffective for failing to make Petitioner's meritless objections.  *Id.*

This Court had original jurisdiction over Petitioner's underlying criminal case under 18 U.S.C. § 3231, which provides exclusive jurisdiction for offenses against the United States, and Federal Rule of Criminal Procedure 18, which provides that the government must prosecute an offense in a district where the offense was committed. A grand jury charged Petitioner by indictment with four counts in violation of the federal criminal code.  (Cr. D. 10.)  Petitioner entered a blind-plea to the four-count indictment on January 27, 2017 (Cr. D. 15 at 2), and was sentenced on June 13, 2017 (Cr. D. Minute Entry 06/13/2017).

## A.     Sufficiency of the Indictment

In *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995), the Seventh Circuit outlined

the standard for a constitutional indictment.  It ruled:

> An indictment is sufficient if it (1) states all the elements of the offense charged, (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense, and (3) enables the defendant to plead the judgment as a bar to later prosecution of the same offense. In reviewing the sufficiency of the indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner. The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. It is generally sufficient that an indictment set forth the offense in the words of the statute itself—as long as the statutory language unambiguously sets out all the elements necessary to constitution the offense.

*Id.* at 914.

Petitioner was charged with three counts of receipt of child pornography and one count of

possession of child pornography under the federal code.  (Cr. D. 10.)  Receipt of child pornography

is defined by federal law as:

> Any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(2) (2012).

Possession of child pornography is defined by federal law as:

> Any person who knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by

computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(4)(B) (2012).

Upon review of the indictment in Petitioner's criminal case, the Court finds it was more than sufficient to provide notice of the charges against him. Specifically, it states all of the necessary elements of the crimes with which Petitioner was charged borrowing language directly from the statute. The indictment also adequately informed Petitioner, and his counsel, of the nature of the charges allowing him to prepare a defense. No reasonable reading of the indictment would confuse Petitioner as to the laws with which he was charged. The charging document clearly conforms to the minimal constitutional standards as outlined by *Allender*. Accordingly, Petitioner's request for relief on this argument is DENIED.

## B. Task Force Officer Jurisdiction

On October 6, 2016, a complaint was filed in Petitioner's criminal case by an HSI Task Force Officer, which outlined the officer's investigation of Petitioner's illicit internet activity. (Cr. D. 1 at 5-14.) The complaint also requested a warrant for Petitioner's arrest. *Id.* at 10. In an affidavit attached to the complaint, the officer explained his affiliation with various federal investigation and enforcement agencies, including HSI. *Id.* at 5. The officer also testified that as a federal task force officer, he is authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the federal courts. *Id.*

Petitioner offers the attenuated argument that this Court lacked jurisdiction over his criminal prosecution because the officer that conducted the initial investigation into his illicit internet activity was not yet authorized to work on behalf of a federal law enforcement agency. (D. 19 at 3.) To bolster his allegation, Petitioner appends a copy of an HSI Task Force Officer

designation form which shows a Certification/Recertification Date of February 28, 2018, for the detective from the Washington, Illinois, Police Department who conducted his initial investigation. *Id.* at 10. Petitioner contends that the detective could not have been deputized as a task force officer with HSI based on the date listed on the designation form. *Id.* at 3. His allegation offers the specious insinuation that a state law enforcement officer was willing to commit perjury in order to investigate his criminal activity.

In reviewing the record and drawing all reasonable inferences in the Government's favor, the Court draws the reasonable inference that the designation form which Petitioner appended to his motion was one for recertification as opposed to initial certification deputizing the officer. The Court also credits the officer's October 2016 sworn affidavit which affirms his authority to work on federal criminal investigations. (Cr. D. 1 at 5.) The Court notes that Petitioner contends that this Court lacked jurisdiction over his criminal prosecution due to the officer's status as a state employee. It declines to descend down the slippery slope of finding credible tangential arguments on his behalf. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe [d]efendant's pro se petition, we are not required to fashion [a d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.") Petitioner's argument, even if true, would not destroy this Court's jurisdiction over his criminal prosecution, and he fails to demonstrate he suffered prejudice as a result of his counsel's alleged error. Accordingly, Petitioner's request for relief on this argument is DENIED.

### C. Interstate Nexus

Petitioner's final argument attacking the Court's jurisdiction over his criminal proceeding is misleading at best. Petitioner argues, sans supporting documentation or caselaw, that his illicit internet activity had an insufficient impact on interstate commerce because the internet traffic in

which he engaged was limited to contact with an internet service provider that was located within thirty miles of his home. (D. 7 at 3.) He also argues that the prosecution admitted that his illicit internet activity had an insufficient impact on interstate commerce during his criminal prosecution, although he fails to indicate where. *Id.* The Government counters these arguments by asserting that the conduct for which Petitioner was charged clearly occurred in this district and that the indictment with which he was charged sufficiently outlined federal crimes. (D. 13 at 12.)

In the *United States v. Lacey*, 569 F.3d 319 (7th Cir. 2009), the Seventh Circuit dealt with an argument very similar to the one at hand. It observed:

> [Petitioner] correctly notes that a guilty plea does not waive certain jurisdictional challenges to a conviction—challenges that go to the very power of the State to bring the defendant into court to answer the charge brought against him. However, contrary to [his] contention, his attack on the evidence supporting the jurisdictional element of his § 2252A(a)(5)(B) conviction is not that type of jurisdictional challenge. A "jurisdictional element" is simply an element of a federal crime. It is jurisdictional only in the shorthand sense that without that [interstate commerce] nexus, there can be no federal crime.... It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.,* a court's constitutional or statutory power to adjudicate a case, here authorized by 18 U.S.C. § 3231. As an offense element, it does not implicate the court's power to hear a case and can be waived by a guilty plea—as it was here. Because [petitioner] has not asked to set aside his guilty plea, we will not entertain his challenge to the sufficiency of the evidence supporting the jurisdictional element of his § 2252A(a)(5)(B) conviction.

*Id.* at 323 (internal quotation marks and citations omitted).

Notwithstanding the waiver of Petitioner's jurisdictional argument with the submission of his guilty plea, the Court finds that the prosecution provided sufficient evidence to demonstrate that it had satisfied the jurisdictional elements of its charges against Petitioner. For the charges of Receipt of Child Pornography, the prosecution had to show that Petitioner:

> knowingly receive[d] . . . any visual depiction *using any means or facility of interstate or foreign commerce* . . . by any means including by computer . . . if-- (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(2) (emphasis added).

For the charges of Possession of Child Pornography, the prosecution had to show that Petitioner:

> knowingly possesse[d] . . . 1 or more . . . films, video tapes, or other matter which contain any visual depiction that has been . . . shipped or transported *using any means or facility of interstate or foreign commerce* . . . by any means including by computer, if-- (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(4)(B) (emphasis added).

At Petitioner's change of plea hearing, the prosecuting attorney testified:

> [Petitioner] admitted that there was child pornography present on his computer that he had purposely sought and downloaded using the BitTorrent software program named uTorrent. He stated that he had been using this software for several years and added that he had been downloading files containing child pornography since the mid-1990's. He acknowledged that the software uses the Internet, which is a means and facility of interstate commerce, to download files[.]

(Cr. D. 15 at 16.)  Additionally, at the same hearing, Petitioner admitted that the aforementioned facts were the basis for his guilty plea. *Id.* at 17.  His clear admission was demonstrated in the following colloquy with the Court:

> THE COURT:  Thank you, Miss [prosecutor]. Mr. Alvarado, do you believe the government can produce that evidence at trial?
>
> MR. ALVARADO:  We do, Judge, but with respect to the exact number of images that he would be responsible for, this is not an element of the offense. We would respectfully ask that that be reserved until sentencing.
>
> . . . .
>
> THE COURT:  Mr. Sills, did you hear what I was just told?
>
> PETITIONER:  Yes, sir.
>
> THE COURT:  Are those facts correct and with Mr. Alvarado's assertion or request about the videos or the images?
>
> PETITIONER:  Yes, sir.

THE COURT: Okay. And are those facts in part the basis for your plea of guilty?

PETITIONER: Yes, sir.

*Id.*

These admissions, alone, are sufficient to establish a factual basis for the jurisdictional elements of the prosecution's charges against Petitioner. *See United States v. Lacey*, 569 F.3d 319, 323-24 (7th Cir. 2009) (finding admissions made by the petitioner during the change of plea hearing were sufficient to establish a factual basis for the jurisdictional element of § 2252A(a)(5)(B). The prosecution was also able to establish the necessary elements of its charges with evidence that Petitioner downloaded a peer-to-peer software program and accessed the internet in order to obtain images and videos of child pornography. (Cr. D. 15 at 13-16.); *see United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (finding that the internet crosses state and international boundaries); *United States v. Napier*, 787 F.3d 333, 346-47 (6th Cir. 2015) (recognizing that the structure of the internet means that transmitting an image via the internet necessarily implicates interstate transportation). Accordingly, Petitioner's argument for relief on this argument is DENIED.

## II.    Suppression of Interrogation Statements

Petitioner next argues his counsel was ineffective for failing to move to suppress the statements he made during his police interrogation on October 5, 2016. (D. 7 at 4-5.) Petitioner repeatedly contends that approximately five minutes into his "six-hour plus" interrogation, he invoked his Fifth Amendment right to counsel. *Id.* at 4; D. 19 at 4. He asserts that despite his invocation of his right to counsel, law enforcement continued to pursue their interrogation and insisted that he provide answers to their questions. (D. 19 at 4.) Petitioner also argues that the statements he made during his interrogation should be suppressed because his addiction to narcotic

tranquilizers made him a significantly impaired interviewee. (D. 7 at 7.) He asserts that "at some point" during his interrogation with authorities, his impairment was evident. *Id.* at 7-8. Petitioner adds that due to his coronary artery disease, his brain did not have the proper levels of oxygen when he was speaking to the authorities, which resulted in confusion and patterns of delusional thinking. *Id.* at 8. He supports his allegations with an affidavit that swears to the accuracy of his arguments. (D. 19 at 13-14.)

In response, the Government argues that in light of the Court's findings at sentencing, it is not reasonably probable that Petitioner would have received a lesser sentence had his attorney advanced these arguments. (D. 13 at 2-3.) It supports this argument with an affidavit from Petitioner's former counsel. (D. 13-1 at 1-6.) The affidavit states that both counsel and Petitioner reviewed the videotaped interview that Petitioner had with police. *Id.*, ¶ 4 at 3. It states that during his interrogation, Petitioner was advised of his Miranda warnings and agreed to speak with investigators. *Id.* It also asserts that the investigators did not use tactics designed to overbear Petitioner; Petitioner freely answered their questions; Petitioner never told investigators he wished to remain silent; he never requested an attorney; and that counsel saw no reason to believe that Petitioner's statements were involuntarily given. *Id.* Counsel also argues it would have been frivolous to raise a suppression issue during his representation of Petitioner. (D. 13-1, ¶ 4, at 2.)

The Parties agree Petitioner was given his *Miranda* warning before his interrogation with authorities on October 5, 2016. (D. 13 at 3; D. 7 at 4.) The Parties disagree, however, as to the voluntariness of Petitioner's confession. Petitioner swears he invoked his right to counsel within the first "5-10 minutes" of his interrogation. (D. 7 at 4; D. 19 at 4.) The Government argues Petitioner never requested an attorney. (D. 13 at 14; D. 13-1 at 2.) Petitioner claims his health condition and addiction to narcotics influenced the voluntary nature of his interrogation. (D. 7 at

7-9; D. 19 at 14.)  The Government asserts Petitioner freely answered questions, asked questions when appropriate, and reiterates that the interview appeared calm and straightforward.  (D. 13 at 14.)

"To successfully advance a claim of ineffective assistance of counsel based upon the failure to file a motion to suppress, a petitioner must demonstrate that there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that, if his confessions were suppressed, he would have been acquitted."  *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (internal quotation marks and citation omitted).

Assuming *arguendo* Petitioner is able to demonstrate that he would have prevailed on a motion to suppress, he fails to demonstrate a reasonable probability that had his confession been suppressed, he would have been acquitted.  The factual circumstances surrounding Petitioner's plea agreement indicate otherwise.  At his change of plea hearing, Petitioner admitted that the prosecution could have produced overwhelming evidence of his guilt, without his confession, had he proceeded to trial.  (Cr. D. 15 at 17.)  That evidence, in part, included approximately 1300 image files and 73 video files containing child pornography found on various computer devices belonging to Petitioner, in addition to the images and files which were the basis for the first three federal charges against him.  *Id.* at 15.  Accordingly, Petitioner fails to meet the prejudice prong of the *Strickland* test, and his request for relief on this argument is DENIED.

### III.     Erroneous Statements in the Presentence Investigation Report

Petitioner next argues he received ineffective assistance of counsel because his attorney failed to object to inadmissible statements and errors that Petitioner noted in his presentence investigation report ("PSR").  (D. 7 at 5-6.)  The Government counters by arguing that  Petitioner's assertion that his objections to certain statements included in his PSR were ignored is unsupported.

(D. 13 at 19.)  It asserts that Petitioner and his counsel thoroughly discussed the initial PSR and Petitioner's objections, as evidenced by counsel's affidavit.  *Id.*  The Government maintains that Petitioner made the incriminating statements that were included in the PSR and that the other alleged inaccuracies for which he complains are either frivolous or *de minimis*.  *Id.* at 19-20.  As such, the Government argues any objections to Petitioner's PSR that were omitted would not have affected his sentence.  *Id.*

In *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018), the Seventh Circuit observed:

> [T]he district court is not bound by the Federal Rules of Evidence during a sentencing hearing and thus, may rely on any information presented at a sentencing hearing, including the PSR, so long as this information has sufficient indicia of reliability to support its probable accuracy. When the district court relies on information contained in the PSR, the defendant bears the burden of showing the information is inaccurate or unreliable. The defendant cannot merely attack the information contained in the PSR by make a bare denial of its accuracy . . . Only when the defendant's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information.

*Id.* (internal quotation marks and citations omitted).

Petitioner fails to demonstrate counsel provided ineffective assistance by failing to make objections to various statements outlined in his initial PSR.  It is unclear which specific objections Petitioner references, as he has chosen to include a copy of his initial PSR with partially indecipherable and conclusory hand-written notes.  (*See* App. A; D. 7 at 13-22.)  Notwithstanding this deficiency, Petitioner fails to demonstrate, with any evidence, how the PSR statements were inaccurate or unreliable.  The Court credits counsel's attestations that he made the strategic decision not to object to various statements in the PSR based on statements that Petitioner made during his interrogation, which demonstrated the objections would have been baseless or contradicted by the statements Petitioner made to the police.  (*See* D. 13, ¶¶ 9-10 at 6.)  Finally,

the Court notes that Petitioner's counsel did advocate for a downward variance of the probation department's minimum recommended sentencing guideline and included arguments that:

> There is no evidence Mr. Sills actively sought out minors on the internet for an illicit purpose. He did not actively trade child pornography with others, except to the extent that the exposure of his shared folder on a peer-to-peer network gave others the ability to download it. His prior criminal convictions, for conduct that occurred almost 30 years ago, did not repeat itself during his second marriage. Agents spoke with Mr. Sills' second wife, [ ], who had a younger daughter at the time she married [him], but she did not report any allegation that he molested her daughter.

(Cr. D. 22 at 3.)  Accordingly, Petitioner's request for relief on this argument is DENIED.

## IV.  Advisory Sentencing Guideline Miscalculations

Petitioner next argues probation miscalculated his total offense level guideline by failing to include a two-level reduction under U.S.S.G. § 2G2.2(b)(1) and by adding a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for his illicit internet activity.  (D. 7 at 6.)  Petitioner argues that he was unaware that others could download illicit files from his computer, as it was unknown to him that "sharing" was the default setting of his BitTorrent software.  In response, the Government argues that Petitioner cannot claim a right to a sentencing reduction under § 2G2.2(b)(1) because there is clear evidence that investigators downloaded images of child pornography directly from Petitioner's computer.  (D. 13 at 18.)  It also argues that Petitioner's counsel was not ineffective for failing to challenge a sentencing enhancement under § 2G2.2(b)(3)(F) because there was ample evidence to establish that Petitioner knew he was distributing content by using a peer-to-peer software program.  *Id.*

Section 2G2.2(b)(1) of the United States Sentencing Guidelines Manual states:

> (b) Specific Offense Characteristics (1) If . . . subsection (a)(2) applies; . . . the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor; and . . .  the defendant did not intend to traffic in, or distribute, such material, decrease by 2 levels.

U.S. Sentencing Guidelines Manual § 2G2.2(b)(1) (U.S. Sentencing Comm'n 2016).

Section 2G2.2(b)(3)(F) of the Manual states:

(b) Specific Offense Characteristics (3) (Apply the greatest): (F) If the defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E), increase by 2 levels.

U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F) (U.S. Sentencing Comm'n 2016).

Petitioner fails to provide any evidence demonstrating he is entitled to relief on the argument that this Court erred in its Sentencing Guidelines calculation because of the ineffective assistance of his counsel. "Where an ineffective assistance claim is brought in a habeas proceeding, the petitioner must present evidence, not mere conclusory allegations." *Bolivar v. United States*, No. 97-C-1236, 1999 WL 759503, at *3 (N.D. Ill. Sept. 7, 1999) (citing *Barkauskas v. Lane*, 946 F.2d 1292, 1294 (7th Cir. 1991)). Moreover, had counsel made the objections that Petitioner suggests, there is no evidence that demonstrates the objections would have been successful.

In *United States v. Ryan*, 885 F.3d 449, 453 (7th Cir. 2018), a case where the defendant used a peer-to-peer file sharing program to download child pornography, the Seventh Circuit ruled that "a user of a file sharing program who passively allows others to download the files stored on his computer has *distributed* those files" for the purpose of the sentencing enhancement under § 2G2.2(b)(3)(F). *Id.* (emphasis added) (citing *United States v. Shaffer*, 472 F.3d 1219, 1223-24 (10th Cir. 2007)). Petitioner fails to argue why the Court should ignore the Seventh Circuit's guidance in *Ryan* (and the record before it) and decline to include a sentencing enhancement under § 2G2.2(b)(3)(F), while providing a two-level sentencing reduction under § 2G2.2(b)(1).

At Petitioner's change of plea hearing, he conceded that law enforcement completed three separate single-source downloads of child pornography at three different times of the day from the

IP address assigned to his home. (Cr. D. 15 at 14; 17.) He also admitted he used a peer-to-peer file sharing program to download the child pornography found on his computer. *Id.* at 14, 16. The Court cannot grant Petitioner relief on the record before it with only unsupported conclusory argumentation. Accordingly, Petitioner's request for relief on this argument is DENIED.

## V.        Failure to Conduct Pretrial Investigation

Petitioner next argues his counsel demonstrated ineffective assistance by failing to investigate the circumstances surrounding Petitioner's prior criminal history and by failing to investigate the BitTorrent software that Petitioner used to download child pornography. (D. 19 at 5-7.) Had counsel investigated the circumstances surrounding his prior convictions for aggravated criminal sexual assault of his own daughters, Petitioner alleges counsel would have learned that his ex-wife, motivated by jealously, was behind the allegations and that the State actually sought to dismiss the charges. *Id.* at 5. Petitioner also argues had counsel investigated his prior convictions, the Court would not have been forced to sentence him "in the blind" and he would have received a reduced sentence. *Id.* at 6. Petitioner concludes by adding that he had "zero awareness that he was actively sharing" downloaded child pornography and that an investigation into the default setting of his BitTorrent software would have substantiated his claims. *Id.*

In response, the Government argues that whether a petitioner who pleaded guilty can establish prejudice from his counsel's failure to investigate depends on whether the information that might have been discovered would have led counsel to change his recommendation as to the plea. (D. 13 at 19.) It also argues Petitioner's counsel did investigate various legal issues and used his investigator to locate mitigation evidence and witnesses, even though counsel may have excluded the evidence and/or witnesses for lack of foundation or credibility. *Id.* at 20. The Government summarizes its response by concluding that without any evidence supporting his

allegations or the specificity the court requires to make an adequate determination on the issue, Petitioner cannot be granted the relief he seeks. *Id.*

In *Richardson v. United States*, 379 F.3d 485 (7th Cir. 2004), the Seventh Circuit analyzed an ineffective assistance of counsel claim based on a failure to investigate allegation, in detail. It observed:

> When the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced. Whether a movant who pleaded guilty can establish prejudice from counsel's failure to investigate depends on whether the information that might have been discovered would have led counsel to change his recommendation as to the plea. This is an objective analysis that requires us to examine what a reasonable person would do without regard for the idiosyncrasies of the particular decisionmaker.

*Id.* at 488 (internal quotation marks and citations omitted).

The Court finds Petitioner fails to establish deficient performance by his counsel, as the existing information in the record belies the reasoning behind Petitioner's investigation requests. While Petitioner claims his prior convictions for aggravated sexual assault were tainted by his ex-wife's influence, he never claims that he was actually innocent of those crimes. The revised PSR indicates Petitioner was convicted of sexually penetrating one of his daughters, who was under the age of thirteen when the act was committed, in 1988. (Cr. D. 19 at 9.) It also reveals that he was convicted of sexually penetrating another daughter, who was a child at the time of the offense, in 1995. *Id.* The alleged motivation behind the sentences for those crimes, which included mandatory registration as a sex offender, fails to negate the fact that Petitioner suffered felony convictions for those acts. The nature of his prior convictions resulted in a subtotal criminal history score of zero in the advisory sentencing guidelines. *Id.* Petitioner fails to provide argumentation or evidence that his counsel would have recommended proceeding to trial knowing the alleged background information of Petitioner's criminal sentences.

Petitioner's suggestion that his counsel should have investigated the BitTorrent software he installed to download child pornography also fails. The facts to which Petitioner admitted during his change of plea hearing demonstrate that on multiple occasions, in late August 2016 and through early September 2016, law enforcement officials were able to download child pornography directly from the computer in Petitioner's home. (Cr. D. 15 at 14.) Once law enforcement was able to obtain a search warrant for his home, they found approximately 1300 image files and 73 video files of child pornography contained on various computer devices belonging to Petitioner, which were in addition to the files for which he was charged in counts I-III of the indictment. *Id.* at 15. Any one of these images could have satisfied the factual basis for the prosecution's case. As in *Richardson*, no reasonable person would have chosen to go to trial if the prosecutor had thousands of opportunities to prove its case. Accordingly, Petitioner's request for relief on this argument is DENIED.

## VI. Miscalculation of Life Expectancy

Petitioner's final argument is that he received ineffective assistance of counsel because counsel failed to object to a miscalculation of his life expectancy during sentencing. (D. 7 at 9-10.) Petitioner alleges the Court failed to consider his serious health issues when it credited the Social Security Administration's actuarial tables and pegged his life expectancy at 20.72 years. *Id.* at 10. He argues a life expectancy of 20.72 years is hardly applicable to him because he has suffered an abundance of smoke inhalation as a volunteer fire fighter, twenty years of asbestos contact as a HVAC contractor, two heart attacks, and has been diagnosed with Type II diabetes. *Id.* Notably, Petitioner does not provide developed argumentation that his counsel failed to object to the Court's guidelines and even references Defendant's Commentary on Sentencing Factors

which includes the ailments for which he complains that was filed by his attorney prior to sentencing. (*See* Cr. D. 22.)

Without referencing the Government's response, and in light of the record before it, the Court denies Petitioner's claim for relief on the misleading argument that his counsel failed to address the ramifications of his health conditions on his overall life expectancy. Defendant's Commentary on Sentencing Factors, which Petitioner's attorney filed well in advance of his sentencing, provided the Court with all of the arguments Petitioner now makes for habeas relief. (Cr. D. 22.) The Commentary stated Petitioner's age, his diabetes condition, high blood pressure, and the blood flow problems related to his heart. *Id.* at 1. It also argued that a sentence at the low end of the guideline range would be a virtual life sentence for Petitioner. *Id.* at 2. Finally, the Commentary asserted the proposed sentencing guidelines were unreasonable and requested that Petitioner receive a sentence of 180 months incarceration; a sentence well below the minimum guideline range of 242 months. *Id.* at 3-7. Many of the arguments contained in the Commentary were also brought to the Court's attention by Petitioner's attorney during the sentencing hearing. (*See* Cr. D. 40 at 35-40.)

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court elucidated the proper procedure for sentencing proceedings by the district court. It advised:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance . . . After settling on the appropriate sentence, he must

adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Id.* at 49-50 (internal quotation marks and citations omitted).

As the sentencing hearing transcript demonstrates, the Court followed the appropriate procedures at Petitioner's sentencing. (See Cr. D. 40.) It adopted the factual findings and guideline sentencing application contained in the presentence report. *Id.* at 42. It addressed the nature and circumstances of the offense. *Id.* It acknowledged Petitioner had been searching for and downloading child pornography since the mid-'90's. *Id.* It found that Petitioner had been connected to a file-sharing program in order to obtain child pornography. *Id.* It found that law enforcement personnel were able to download child pornography from Petitioner's IP address. *Id.* at 43. It credited the fact that a forensic examination located at least 1322 images of child pornography on Petitioner's computer. *Id.* at 45. It underscored the serious nature of Petitioner's illegal activity. *Id.* at 46. It addressed the history and characteristics of Petitioner, including his prior convictions for molesting his underage daughters. *Id.* at 47. It noted Petitioner's health conditions including high blood pressure, arthritis, and diabetes. *Id.* at 48. It acknowledged Petitioner's positive employment history. *Id.*

In imposing a 240-month below guideline sentence, the Court observed:

The sentencing range established . . . is . . . 262 to 327 [months]. There are some arguments in the sentencing commentary about that maybe being a little high, and there's some comments about some of these factors that . . . result in the ultimate sentencing range that may be somewhat duplicative. . . . I think there's something broken inside of you when it comes to this type of thing. I'm very troubled by the fact that these incidents happened involving your daughters; but then . . . here we are back in 2016, and here you are at the time of your arrest with the attitude that if . . . they take your computer, you'll get another one, because that's how you . . . make yourself happy . . . . The sentence I'm going to impose is at a level of 240 months. And if my math is correct . . . assuming good behavior . . . he would serve 204 months. . . And that would effectively be a sentence of 17 years.

*Id.* at 51-52.

There is no evidence in the record that provides Petitioner an avenue for relief on the argument that his counsel provided ineffective assistance by failing to object to a miscalculation of his life expectancy, or that the Court failed to take into consideration his overall health when imposing its sentence. Accordingly, Petitioner's final ground for habeas relief is DENIED.

## DENIAL OF CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Petitioner is only entitled to a certificate of appealability if he can make a substantial showing of the denial of a constitutional right. *Evans v. Circuit Court of Cook Cty.*, 569 F.3d 665, 667 (7th Cir. 2009). To meet this standard, Petitioner must demonstrate that a reasonable jurist would find the Court's assessment of his claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that Petitioner has not made a substantial showing that reasonable jurists would differ in their assessment of the merits of his claim. His claims of ineffective assistance of counsel fail to satisfy the deficient performance prong or the prejudice prong of the *Strickland* test. Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons stated above, Petitioner's [7] Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is DENIED. The Court declines to issue Petitioner a Certificate of Appealability. This matter is now TERMINATED, and the Clerk of Court is directed to close this case.

Entered on March 17, 2020.                            /s/ Michael M. Mihm
                                                       Michael M. Mihm
                                                       United States District Judge